UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **2:25-cv-04894-MCS-BFM** | Date | March 3, 2026 |
|---|---|---|---|

| Title | *Phelps v. Air-GP LLC* |
|---|---|

Present: The Honorable    Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER RE: MOTION TO REMAND (ECF NO. 38)**

Plaintiff Marc Phelps moves to remand this action to the Los Angeles County Superior Court for lack of jurisdiction. (Mot., ECF No. 38-1.) Defendants AIR-GP LLC, Apartment Income REIT Corp., Apartment Income REIT, LLC, Apartment Income REIT, L.P., and OP Property Management opposed the motion, (Opp'n, ECF No. 43), and Plaintiff filed a reply, (Reply, ECF No. 45). The Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

This is a putative class action relating to Defendants allegedly withholding their tenants' security deposits in violation of California Civil Code section 1950.5. (*See generally* SAC, ECF No. 35.) Plaintiff, a former tenant of one of Defendants' apartment communities who claims Defendants wrongfully deducted $1,438.71 from his security deposit, originally filed his complaint in the Los Angeles County Superior Court. (*See* Compl. ¶ 56, ECF No. 1-1; SAC ¶ 56.) Defendants removed the case to federal court, invoking this Court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Notice of Removal ¶ 7, ECF No. 1.) Defendants moved to dismiss the complaint in part, which the Court granted. (Order Re: MTD,

---

ECF No. 27.) Thereafter, Plaintiff amended his complaint twice. (FAC, ECF No. 28; SAC.) Over a month after filing his second amended complaint, and more than seven months after the case was initially removed, Plaintiff filed a motion to remand this case back to state court for lack of subject-matter jurisdiction. (*See* Mot.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit must be remanded. *Id.* § 1447(c).

## III.   DISCUSSION

The Class Action Fairness Act of 2005 ("CAFA") provides federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (2005)). Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), the removing party still bears the burden of establishing federal jurisdiction, *see Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal."). Plaintiff challenges the minimal diversity and amount in controversy elements. (Mot. 9–14.)

### A.   Minimal Diversity

"[U]nder CAFA, complete diversity is not required; minimal diversity suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (internal quotation marks omitted). The minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." *Id.* § 1332(d)(10). This rule applies

to limited liability companies and partnerships. *Hurt v. SH Grp. Hotels & Residence U.S. LLC*, No. 2:24-cv-08840 MWC (ASx), 2024 WL 5244725, at*2 (C.D. Cal. Dec. 30, 2024) (collecting cases).

Defendants have established that the parties were minimally diverse at the time of removal. The parties agree that Plaintiff is a California citizen. (Compl. ¶ 5; Notice of Removal ¶ 22.) Plaintiff further alleges that Defendants Apartment Income REIT, L.P., and Apartment Income REIT, LLC, are both organized under Delaware law and maintain principal places of business in Colorado. (Compl. ¶¶ 7, 10.) In support of their notice of removal, Defendants submitted a declaration from Matthew Holmes, an executive vice president for Apartment Income REIT, LLC, that essentially conceded both allegations. (*See* Holmes Decl. ¶¶ 2, 4, ECF No. 1-3.) Mr. Holmes further declares that Defendant OP Property Management, L.P., is also organized under Delaware law and maintains its principal place of business in Colorado. (*Id.* ¶ 6.) Rather than disputing the factual basis for any of Mr. Holmes's assertions, Plaintiff argues that Defendants "improperly apply the corporate citizenship test, focusing only on the state of incorporation and principal place of business" for each defendant, rather than the citizenship of each Defendants' individual partners or members. (Mot. 10.) While it is generally true that the citizenship of partnerships and limited liability companies, for purposes of diversity jurisdiction, is based on the citizenship of individual members and partners, *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), that general rule has been expressly displaced by CAFA's unambiguous language, *see* 28 U.S.C. § 1332(d); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) (collecting cases). Based on Plaintiff's own allegations, which Defendants have essentially conceded, Defendants Apartment Income REIT, L.P., Apartment Income REIT, LLC, and OP Property Management, L.P., are all citizens of Colorado and Delaware under CAFA because they are all organized under Delaware law and maintain principal places of business in Colorado.[1] Since Plaintiff is a California citizen, he is a citizen of a different state than at least one Defendant. Minimal diversity is satisfied.

---

[1] Plaintiff's motion is silent as to the citizenship of Defendant Apartment Income REIT Corp. (*See generally* Mot.) While Plaintiff alleges that this Defendant is a "Maryland corporation," (Compl. ¶ 9), Defendants contend that this entity converted into Defendant Apartment Income REIT, LLC, in July 2024, (Holmes Decl. ¶ 3). The Court need not determine Apartment Income REIT Corp.'s citizenship since Defendants have already established minimal diversity.

The parties spill a great deal of ink debating whether Defendant AIR-GP, LLC ("AIR-GP"), is a California or Delaware citizen. (*See* Mot. 9–10; Opp'n 9–11; Reply 5–7.) According to Plaintiff, AIR-GP was registered as a California limited liability company at the time Plaintiff filed his complaint and so should be viewed as a California citizen since citizenship is determined at the time of filing. (Mot. 9; Dodds Decl. ¶ 2, ECF No. 38-2.) About a month after filing, AIR-GP terminated its California certificate and re-filed as a Delaware limited liability company. (Dodds Decl. ¶ 2.) While Plaintiff pejoratively characterizes this as a "last-minute sham change of citizenship solely to manufacture federal jurisdiction," (Mot. 14), Defendants argue that AIR-GP has in fact always been a Delaware entity and that the California filings Plaintiff invokes contained inaccurate information, (Opp'n 10–11). But whether AIR-GP is a California citizen or not is of no consequence.[2] CAFA requires only minimal diversity, not complete diversity. *Serrano*, 478 F.3d at 1021. As discussed above, Defendants have already established that Plaintiff and at least one Defendant are citizens of different states, so the Court need not determine, or even consider, AIR-GP's citizenship.[3]

Defendants have met their burden to establish that the parties are minimally diverse.

## B.    Amount in Controversy

Plaintiff next argues that Defendants have not demonstrated that the amount in controversy exceeds $5 million. (Mot. 12–14.) Where the amount in controversy

---

[2] To the extent AIR-GP's citizenship is relevant for application of the so-called "local controversy exception" to CAFA jurisdiction, Plaintiff has not developed any argument on that point. (*See* Mot. 7 (citing 28 U.S.C. § 1332(d)(4)(A) but providing no argument applying the rule to this case); Reply 11 (conceding "[t]he local controversy exception is not at issue").) And nor could he, given that the 30-day deadline to mount such a challenge to removal has long since lapsed. *See* 28 U.S.C. § 1447(c); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020) ("The local controversy . . . exception[] [is] not jurisdictional.").

[3] Both sides filed requests for judicial notice asking the Court to consider various registration documents AIR-GP filed in California and Delaware. (*See* Pl.'s RJN, ECF No. 38-6; Defs.' RJN, ECF No. 44.) Because the Court need not consider AIR-GP's citizenship to conclude that minimal diversity is satisfied, both requests are denied as unnecessary. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016).

---

is not apparent from the face of the complaint, the removing party is "required to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *accord Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

The amount in controversy was not clear from the face of complaint at the time of removal. Plaintiff did not plead any specific amount in controversy and acknowledges as much in his motion. (Mot. 12 n.2; *see generally* Compl.) Having reviewed Defendants' calculations, assumptions, and arguments, the Court concludes that Defendants have met their burden to show that the amount in controversy more likely than not exceeds $5 million.

At the time of removal, Plaintiff defined the "Unsubstantiated-Charges Class" as "[a]ll former residents of Defendants' California properties whose leaseholds terminated between April 23, 2021, to present, and who had at least $125 of their security deposit retained for cleaning, repairs and/or replacements combined." (Compl. ¶ 69.)[4] The complaint elsewhere alleges that Defendants own or manage 24 residential apartment properties in California containing over 9,000 individual units. (*Id.* ¶ 14.) The Court credits the declaration of Mr. Holmes, an executive vice president for Apartment Income REIT, LLC, who reviewed and personally "analyzed AIR's pertinent business records," (Holmes Decl. ¶ 7), as probative of the potential size of the class and amount of security deposits Defendants retained during

---

[4] Plaintiffs have since narrowed the proposed class definition to only include California residents. (*See* SAC ¶ 69.) Because the relevant question is whether the amount in controversy was satisfied at the time of removal, *Ibarra*, 775 F.3d at 1197, the Court considers the original proposed class definition. It is unclear whether the revised definition is substantially narrower than the original definition given that both are limited to former residents of Defendants' California properties.

---

the relevant period.[5] *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *see, e.g.*, *Tennison v. Hub Grp. Trucking, Inc.*, No. LA CV20-05076 JAK (SPx), 2020 WL 7714702, at *7 (C.D. Cal. Dec. 28, 2020) (denying motion to remand upon evidence provided by defense declarant who was "generally familiar with Defendants' operations at 30 facilities in California").

According to Mr. Holmes, approximately 13,500 residents had leaseholds that expired between April 22, 2022, and May 29, 2025, and more than 10,000 of those residents had at least $125 withheld from their security deposit. (Holmes Decl. ¶ 8.) The total amount of security deposits paid to Defendants during this period exceeded $6.6 million, and the total amount of deductions from former residents' security deposits where at least $125 was deducted was greater than $3.7 million. (*Id.* ¶ 10.) Because the complaint seeks the "return of the entirety of all Plaintiff's, the Plaintiff Class', and the Plaintiff Subclass' security deposits retained by Defendants," (Compl., Prayer for Relief ¶ 2), Defendants reason the amount in controversy based solely on the retained security deposits is at least $3.7 million, (Holmes Decl. ¶ 11). The Court agrees. The crux of Plaintiff's complaint is that Defendants "systematically, uniformly, and in bad faith" violated California law by improperly retaining certain amounts from their former tenants' security deposits and obscuring the amount through its reporting practices. (Compl. ¶ 67.) Based on this widespread, systematic conduct, Plaintiff seeks a return of the "entirety" of all security deposit funds retained by Defendants. (*See id.*, Prayer for Relief ¶ 2.) Defendants are entitled to rely on these allegations in calculating the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) ("[I]n assessing the amount in controversy, a removing defendant is permitted to rely on a chain of reasoning that includes assumptions. . . . An assumption may be reasonable if it is founded on the allegations of the complaint." (internal quotation marks and citations omitted)). Not only does Plaintiff allege widespread systematic violations potentially impacting thousands of former residents, but he expressly seeks the return of the entirety of all retained security deposits without qualification. This is not a situation

---

[5] In his reply brief, Plaintiff raises several evidentiary objections to Mr. Holmes's declaration. (Objs. to Holmes Decl. ISO Reply Br., ECF No. 45-1.) To the extent Plaintiff wanted to challenge the truth of, or evidentiary basis for, the statements in the declaration, which was filed in conjunction with Defendants' notice of removal, he should not have waited until his reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The objections are overruled.

in which Defendants are arbitrarily assuming a 100% violation rate. *Cf. Beck v. Saint-Gobain Containers*, No. 2:16-cv-03638-CAS-SK, 2016 WL 4769716, at *8–9 (C.D. Cal. Sept. 12, 2016). Instead, Defendants made the reasonable assumption that they could take Plaintiff at his word that he seeks the return of the "entirety" of all security deposit funds retained in excess of $125. (*See* Compl., Prayer for Relief ¶ 2.)[6] The Court accepts Defendants' estimate, which is based on Mr. Holmes's personal review of relevant business records and reasonable averages over the proposed class period, that at least $3.7 million in retained security deposits is in controversy.[7]

Defendants also argue the Court should consider statutory penalties in calculating the amount in controversy. (Notice of Removal ¶ 18; Opp'n 17–19.) Plaintiff has brought claims under California Civil Code section 1950.5 based on Defendants' bad faith retention of Plaintiff's and class members' security deposits. (Compl. ¶¶ 72–79; SAC ¶¶ 72–79.) Section 1950.5(m) provides for statutory penalties "of up to twice the amount of the security, in addition to actual damages" for bad faith failures to comply with the statute's requirements. Cal. Civ. Code § 1950.5(m). Plaintiff posits that Defendants cannot assume that the maximum statutory penalty will be awarded to every class member. (Mot. 13–14; Reply 9–10.) But Plaintiff's own allegations paint a different story. Plaintiff pervasively alleges that Defendants "systematically, uniformly, and in bad faith" violated section 1950.5 through their standard security deposit retention and reporting practices, impacting thousands of former tenants. (Compl. ¶ 67; *see also id.* ¶¶ 37, 70(2)(g)–(h), 79.) And Plaintiff expressly alleges that one of the questions common to each proposed class member is whether Defendants "are liable to each [class member] for his or her actual damages, plus twice the amount of the security for bad-faith retention of security deposits." (*Id.* ¶ 70(2)(h).) It is entirely reasonable for Defendants to assume Plaintiff seeks the maximum statutory penalty on behalf of all class members since he has expressly stated as much in his complaint. *Korn v. Polo Ralph Lauren Corp.*,

---

[6] The allegations discussed in this paragraph remain unchanged in the operative complaint. (SAC ¶ 67, Prayer for Relief ¶ 2).

[7] The Court also notes that these numbers are only based on Mr. Holmes's review of documents between April 22, 2022, and May 29, 2025. (*See* Holmes Decl. ¶ 7.) The proposed class, however, includes former residents whose leaseholds terminated after April 23, 2021. (Compl. ¶ 69.) That means Mr. Holmes's estimate of the total amount of retained security deposits does not take into account an entire year's worth of potential retentions, so his estimate likely undervalues the true amount of retained security deposits Plaintiff has placed in controversy.

536 F. Supp. 2d 1199, 1205–06 (E.D. Cal. 2008) (applying maximum statutory penalty in CAFA amount in controversy analysis where the plaintiff expressly pleaded that he was seeking the maximum penalty).[8] Based on Mr. Holmes's estimate that $3.7 million were detained from class members' security deposits, and Plaintiff's express allegations that he is seeking the maximum penalty on behalf of all class members due to Defendants' systematic, bad faith conduct, the Court is satisfied that Plaintiff has placed $7.4 million in statutory penalties in controversy.

Defendants have met their burden to show by a preponderance of the evidence that the amount in controversy exceeds $5 million. Because there is minimal diversity and the proposed class has more than 100 members, the Court has subject-matter jurisdiction under CAFA.

**C.    Attorney's Fees and Costs**

Both sides request an award of attorney's fees and costs. Plaintiff requests fees under 28 U.S.C. § 1447(c) based on Defendants' "baseless removal." (Mot. 14–15.) Because the Court concludes that it has subject-matter jurisdiction and that removal was proper, Plaintiff is not entitled to fees under § 1447(c). Defendants request fees and costs under 28 U.S.C. § 1927 and Federal Rules of Civil Procedure 1 and 11 for having to respond to Plaintiff's "frivolous" motion to remand. (Opp'n 19.) Because there are reasonable arguments on both sides as to whether removal was proper under CAFA, Defendants' request for fees and costs is also denied.

///

---

[8] While this Court generally requires some indicia of willfulness that would entitle a plaintiff to statutory penalties beyond the complaint's allegations for cases removed under 28 U.S.C. § 1332(a), *see e.g.*, *Garcia v. Nissan N. Am., Inc.*, No. 2:25-cv-11102-MCS-SK, 2026 WL 194847, at *3 (C.D. Cal. Jan. 26, 2026) (Scarsi, J.), Defendants here invoke the Court's jurisdiction under 28 U.S.C. § 1332(d), (Notice of Removal ¶ 7). Since there is no strong presumption against removal under § 1332(d) like there is for removal under § 1332(a), *Dart Cherokee Basin*, 574 U.S. at 89, the Court need not require the same indicia of willfulness before it considers statutory penalties in the amount-in-controversy analysis for cases removed under CAFA, especially when Plaintiff's entire theory of the case is based on widespread, systematic, and bad faith conduct.

## IV.   CONCLUSION

The motion is denied.

**IT IS SO ORDERED.**